GREENLEAF, Admr., v. THE ILLINOIS CENTRAL RAILROAD COMPANY.

1. **Negligence:** WHEN A QUESTION OF LAW FOR THE COURT. While the question as to whether a party has been guilty of negligence, which is one of mixed law and fact, may be decided as a question of law by the court, where the facts are undisputed or conclusively proved, this rule does not apply when the facts *are* disputed, and the evidence is conflicting.

2. **Jury and verdict:** SPECIAL FINDINGS: PRACTICE. The action of the court below in refusing to return the jury to their room to find specifically upon certain questions which they had failed and signified their inability to answer, will not be disturbed when it is not apparent that in this there was abuse of discretion on the part of the trial court.

3. **Railroad:** INJURIES TO EMPLOYEES: DUTY IN PROVIDING PROPER APPLIANCES. It is the duty of railroad companies to provide their cars with such appliances as are calculated and reasonably necessary to insure the safety of their employees.

4. —— INSTRUCTION CONSTRUED IN REFERENCE THERETO. In an action against a railroad company to recover for the accidental death of an employee, it was contended by the plaintiff, on the trial, that the deceased fell under the train by reason of a want of proper appliances on the end of the car he was descending to uncouple the train. The court charged the jury, in one of its instructions that "it was the de-

Greenleaf v. Illinois Central Railroad Company.

fendant's duty to provide cars with such appliances as are best calculated to insure the safety of employees; and if a ladder on the end of the car, or a handle, as described by the witnesses, would be a better protection to life than the car which *produced the accident*, then it would be defendant's duty to furnish a car with such appliances.'' *Held*,

1. That a fair construction of the language used in the instruction, under the circumstances of the case, did not warrant the position that by it the defendant was held to use the highest skill in procuring the very best appliances, but rather those appliances which were reasonably best calculated to insure safety, as compared with those furnished.

2. That the expression "the car that produced the accident," did not assume as a fact that the car produced the injury, and that the jury could only reasonably have believed that it was used as designating the car which plaintiff claimed was defective.

5. —— KNOWLEDGE OF DEFECT BY COMPANY. If the car in question was wanting in the appliances reasonably necessary for the safety of employees at the time of its construction, and so continued when put and used upon the road, it would not be necessary to show any further knowledge thereof on defendant's part in order to fix its liability.

6. —— If, however, it at one time had these appliances, and they were afterward removed by accident or otherwise, then before an employee could recover on account of such defect, it would have to be shown that the company or its agents had notice thereof, or might have known it by the use of ordinary care.

7. —— KNOWLEDGE OF DEFECT BY EMPLOYEE. If the danger or defect was known to the employee, or might have been known by the use of ordinary care, and there was no inducement used for him to remain, by promises to remove the danger by remedying the defect, it would seem that he thereby assumes the risk and would not be entitled to recover for injuries resulting therefrom.

8. —— NEGLIGENCE: ONUS PROBANDI. The burden of proof is upon the employee to show both the negligence of the company and his own care. But he is not bound to do more than raise a reasonable presumption of negligence on the part of the company.

9. —— WHERE EMPLOYEE ACTS UNDER INSTRUCTIONS. Though the employee previously knew of the defect in the applications of the car, his right to recover for injuries resulting therefrom would not thereby be

Greenleaf v. Illinois Central Railroad Company.

defeated if he was acting at the time under the immediate orders of a superior. The circumstances which the jury may take into consideration in passing upon the question as to whether the employee used due care, stated by WRIGHT, J

*Appeal from General Term, Ninth District (Dubuque County).*

THURSDAY, JUNE 9.

PRESTON GREENLEAF was in defendant's employ as a brakeman, and while, as is claimed, in the discharge of his duty was killed by the negligence and carelessness of defendant. To recover for this damage to the estate, plaintiff, the administrator, brings this action. Trial and verdict for $8,000; judgment thereon. Affirmed in the general term, and defendant again appeals.

*Crane & Rood* for the appellant :

I. At the close of the evidence on both sides the defendant moved the court to direct the jury to render a verdict for the defendant, and at the final submission of the case to the jury asked an instruction to the same effect, urging as a reason that the evidence in the case would not warrant the jury in finding a verdict for the plaintiff.

The court refused to entertain the motion, assigning as a reason for such refusal that there was no rule of practice authorizing such a proceeding.

It is insisted that such a motion is proper, for the reason that under our code of civil practice it is a substitute for the motion for a nonsuit under the former system of practice, that it ought to be allowed and sustained wherever under the old system of practice a nonsuit would be granted, and in all cases where the court would feel bound to set aside a verdict as often as rendered for the plaintiff on the ground of its being contrary to the evidence. "In

the latter class of cases a refusal of the judge to instruct the jury that the evidence is insufficient, is a good ground of exception, and it is not necessary that there should be absolutely no evidence." *Callahan* v. *Ware*, 40 Mo. 136; *Denny* v. *Williams*, 5 Allen, 4.

The object of section 3127 of the Revision, in requiring the decision to be upon the merits, is obviously to prevent re-trials and put an end to litigation ; and to fully carry out this object the court must exercise the power of directing verdicts for the defendant in cases where nonsuits would be proper under the old practice. In such cases it is the duty of the court to set aside verdicts for the plaintiff as often as rendered. The exercise of this power by the court is equally proper and necessary in cases where the court would set aside verdicts on the ground of their being contrary to evidence. 16 Iowa, 184; 34 N. Y. 13; *Wilds* v. *The Railroad Co.*, 24 id. 433; *Allegro* v. *Duncan*, 39 id. 314; *The Pittsburg Railroad Co.* v. *McClurg*, 56 Penn. St. 294. See also cases cited under next point.

II. The question whether or not a party has been guilty of negligence in a particular case is one of mingled law and fact. 21 Iowa, 26. Where the facts are undisputed or conclusively proved by the evidence, the question of negligence must generally be decided by the court as a matter of law. 24 id. 554.

In *Todd* v. *The Railroad Co.*, 3 Allen, 22, plaintiff's arm, protruding out of the window of a car in which he was riding, came in contact with the swinging door of a car on another track : *held*, that " in such a state of the evidence it was the duty of the court to decide on its legal effect, and to say to the jury that the plaintiff had failed to make out his case." *Lucas* v. *Railroad Co.*, 6 Gray, 64; 2 Kan, 490; *Gavett* v. *Railroad Co.*, 16 Gray, 74; 36 Mo. 202; 20 Cal. 56; *Gahagan* v. *Railroad Co.*,

1 Allen, 187 ; 37 id. 287, 338 ; 5 Ohio St. 567 ; 34 N. Y. 13 ; 5 Allen, 1; 5 Gray, 102.

"Questions of care and diligence, after the facts are proven, must be decided by the court." *Biles* v. *Holmes*, 11 Ired. 16 ; *Herring* v. *Railroad Co.*, 10 id. 402.

After a full examination of the subject in the *P. & C. Railroad Co.* v. *McClurg*, 56 Penn. St. 294, it is held by the supreme court of that state, that, "what in a given state of facts constitutes negligence is generally a question of law" to be decided by the court.

Precisely the same principle is approved by the supreme court of Indiana, in the case of the *I. & C. Railroad Co.* v. *Rotherford*, 7 Am. Law. Reg. 476.

To same effect see : *Trow* v. *The Railroad Co.*, 54 Vt. 497 ; *Briggs* v. *Taylor*, 28 id. 325 ; *Moore* v. *The Railroad Co.*, 4 Zab. 268 : *Cotton* v. *Wood*, 98 Eng. Com. Law, 566.

The supreme court of Connecticut has in effect been compelled to abandon the doctrine that the question of negligence is purely a question of fact for the jury. *Fox* v. *Glastenbury*, 29 Conn. 208.

The same is true of the supreme court of Missouri, 40 id. 136, and 42 id. 196, and of the supreme court of Wisconsin, 22 id. 635.

III. The evidence in the case at bar was not sufficient to carry the case to the jury, and hence it was the duty of the court to direct the jury to find a verdict for the defendant.

The burden of proof was on the plaintiff to show affirmatively that the death of his intestate was caused by the negligence of the defendant, and that it was not to any extent caused by the negligence of his intestate ; or rather that his intestate was at the time of the accident in the exercise of due care to avoid an injury. In both

particulars the plaintiff has failed to make out a *prima facie* case.

The only evidence bearing upon either point is to the effect that the last time the plaintiff's intestate was seen alive by any person, he stood up between the tender to the locomotive and the car attached thereto, and having uncoupled the train gave the signal by voice to the fireman to go ahead; the instant the signal was given the fireman turned his eye from him, and no human eye saw him afterward till the fourth car had passed over his mangled body. It is also shown that at the time of the accident a flying switch was being made; that the car next to the tender had on it sleet and snow; and was deficient in the appliances commonly used for the safety of brakemen.

But how the intestate got under the train, or what caused him to fall is a matter of pure conjecture, a question upon which the evidence sheds no light whatever.

Whether he attempted to climb to the top of the car to apply the brake, and in making such attempt fell to the ground, in consequence of the careless manner in which his foot was placed upon the end of the car sill; whether he thoughtlessly gave the fireman the signal to go ahead before securing a firm hold upon the car, the car itself being made slippery with the snow and sleet of the previous night; whether he lost his balance in consequence of the sudden and unexpectedly quick starting of the engine and tender; whether he got upon the car in a wrong and careless position, and in the effort to change slipped by reason of the sleet and snow; or whether he was not suddenly stricken down by the hand of some violent disease, are all questions to which the evidence furnishes no satisfactory answers.

Again: How can it possibly be known from the evidence that the intestate would not have fallen just as he

did even if the car had been furnished with the brake-rod or handle-rod mentioned by the witnesses? Even assuming that the absence of the common appliances had something to do with the intestate's falling under the cars, where is the evidence that his own carelessness did not largely contribute to the same result?

Before uncoupling the car and giving the signal to go ahead, it was the duty of Greenleaf to know the condition of the car and to ascertain the means of holding on after making the uncoupling. How can it be known from the evidence that his neglect of this important duty was not the sole cause of his misfortune?

In the case of *Trew* v. *The Railroad Company*, 5 Hurl. and Nor. 210, suit was brought upon a life insurance policy, wherein the assured was indemnified against loss of life by accident. The evidence showed that the assured went out alone to bathe. His clothes were found on the steps of a bathing machine, and some weeks afterward a body supposed to be his was found on the coast. The court held, that according to the terms of the policy it was incumbent upon the plaintiff, in order to recover, to show, not only the fact of drowning, but also how the drowning occurred—whether by accident or by natural disease. Thus, to illustrate, if the assured mistook the depth of the water, and in plunging into it struck his head against a rock and was killed, that would be a death by accident; but death from apoplexy would not.

The members of the court were unanimous in the opinion that the evidence was insufficient to authorize the jury to find a verdict for the plaintiff. Their language is as follows: "The case ranges within that class where, if the state of facts is consistent with one view or the other, there is no evidence for the jury. Here there is no evidence how the assured died; he may have

Greenleaf v. Illinois Central Railroad Company.

died from apoplexy, or he may have been struck by a boat. There is nothing to lead to the supposition that the assured died in the one way rather than the other."

A precisely similar ruling was made in the case of *Cotton* v. *Wood*, 98 Eng. Com. Law. 366. In that case the evidence showed that the plaintiff's wife, on a dark night and in a snow storm, proceeded slowly, accompanied by another female, to cross a crowded thoroughfare while the defendant's omnibus was coming up on the right side of the road and at a moderate pace, and with abundant time for the woman to get safe across if nothing else had intervened; but in turning back to avoid another vehicle they returned, and unfortunately met the danger whereby she was killed. The court there say: "There is another rule of the law of evidence, which is of the first importance, and is fully established in all the courts, viz: that where the evidence is equally consistent with either view, with existence or non-existence of negligence, it is not competent for the court to leave the matter to the jury."

In the case at bar the whole evidence is consistent with the idea that Preston Greenleaf slipped and fell through his own carelessness; that he incautiously and negligently permitted the train to separate before securing a proper foothold; or that he thoughtlessly placed his feet upon the draw head or tender in such a manner that the snow and ice caused them to slip and him to fall. There are many ways in which he might have fallen, even before attempting to climb on to the car for the purpose of applying the brake. As to what caused him to fall from the cars, the evidence in the case leaves us entirely in the dark. In this connection it must be remembered, that it is incumbent on the plaintiff to show by affirmative proof that the death of said Greenleaf was caused by the absence of proper applicances on the car, and without any carelessness on his part. The evidence

neither proves nor tends to prove either one of these propositions.

In *Toomey* v. *The Railroad Company*, 91 Eng. Com. Law, 148, the plaintiff having occasion to go to the urinal at a railroad station, inquired of a stranger where he should find it, and, having received a direction, by mistake opened the door of the lamp room, and fell down some steps and was injured. The court decided that it is not enough to say that there was some evidence, for every person who has had any experience in courts of justice knows very well that a case of this sort against a railway company could only be submitted to a jury with one result. A scintilla of evidence, or a mere surmise, that there may have been negligence on the part of the defendant, clearly would not justify the judge in leaving the case to the jury ; there must be evidence upon which they might reasonably and properly conclude that there was negligence." This same language was quoted and approved by the court of exchequer in *Cornman* v. *The Railroad Company*, 4 Hurl. and Nor. 781.

In *Lehman* v. *The City of Brooklyn*, 29 Barb. 234, it appeared that there was a well in one of the streets of the city, on a level with the grade of the sidewalk, and usually covered with a wooden cover having a square opening in the centre, which was also covered with a lid, opening and shutting on leather hinges ; and the intestate, a child four years of age, was found dead in the well within half an hour after leaving his home. And the court held in an action against the city by the administrator of the child, to recover damages for negligence, that the plaintiff was bound to show how the accident occurred, to throw some light upon the causes which led the child to the vicinity of the well, and the condition of the opening in the well, and whether it was closed or not when the deceased came there. Assuming that this child could, through the care-

lessness of its parents or its own misconduct, be capable of contributory negligence, it is clearly impossible to tell, from the evidence adduced in the case, whether the death occurred through the negligence of the child or of the defendant, or without any culpable fault of either.

In *Walker* v. *Herron*, 22 Tex. 58, the facts were as follows : The defendant purchased and brought upon his own premises some horses, which he afterwards discovered were infected with a contagious disease. Immediately after the discovery of this fact, he gave due warning to the plaintiff. But, notwithstanding the warning, the plaintiff permitted his horses to remain in the range, which he, with others, used as a public range before the diseased horses made their appearance, and in a short time his horses were affected with the same disease. Whether the contagion was communicated by plaintiff's horses going upon defendant's premises, or by defendant's horses going upon plaintiff's premises, or by their meeting in the public range, appears not to have been disclosed by the evidence. In other words, it was impossible to determine from the testimony where or how it was the disease was communicated from defendant's to plaintiff's horses. The court held, that the plaintiff could not recover until he offered some evidence that his own fault or negligence did not contribute to produce the injury complained of. In short, whenever the whole evidence of the plaintiff is perfectly consistent with the idea that the injury was caused, in whole or in part, by his own negligence, no action can be maintained. The party holding the affirmative must do more than make a balanced case ; he must turn the scales in his own favor. *Curren* v. *Warren*, 36 N. Y. 153 ; 37 Mo. 287 : *Button* v. *The Railroad Company*, 18 N. Y. 248 ; *Lane* v. *Crombie*, 12 Pick. 177.

IV. The sixth paragraph of the court's charge is

clearly erroneous; the language of this paragraph will admit of but one construction. Such appliances as are "best calculated to insure safety," necessarily means the same thing as the best appliances; in other words, to secure the safety of its employees, the company is bound to exercise, in the construction and equipment of its cars, the highest degree of care, skill and diligence of which human effort is capable, since in no other way can it secure the best appliances. This principle prevails as to passengers, but certainly not as to employees. *Hunt* v. *The Railroad Company*, 26 Iowa, 363.

Another objection to this paragraph is, that it assumes as true a question of fact material to the case; whether "the car produced the accident," or not, was one of the issues between the parties to the suit. 12 Iowa, 126; 14 id. 365; 12 id. 450; 26 id. 170; 7 Ind. 453; 16 Md. 422; 9 Cal. 565.

V. The tenth paragraph of the court's charge is also open to objection. It is as follows:

"If you find that the deceased was in the discharge of his duties, under the control of a superior officer or agent of the defendant, and that the accident was occasioned by reason of the defective construction of the car next to the tender, or the improper manner in which the train was made up, or from having no way car or caboose attached to the train, and without the deceased's fault, then you should find for the plaintiff."

1. The court erred in permitting the jury to find that the deceased, at the time of the accident, was in the discharge of his duties under the control of a superior officer or agent. There was no evidence whatever from which the jury could find such a fact; such an instruction was calculated to mislead and confuse the jury. 8 Iowa, 124, and cases there cited; 12 id. 462, 473; Hammond's Digest, 494, § 35, and cases.

2. The court also erred in permitting the jury to find that the accident was occasioned by reason of the improper manner in which the train was made up, or from having no way car or caboose attached to the train.

The death of Greenleaf could in no sense have been the natural and probable effect of the making up of the train, or the absence of the way car.. The relation of cause and effect between the conduct complained of and the injury sustained, cannot possibly be established. 1 Hilliard on Torts, 78, note 4 ; 23 Ind. 69 ; Sher. and Redf. on Negl. 7, § 9.

3. A third objection to this paragraph, is, that it makes the company liable on the ground that the accident was occasioned by reason of the defective construction of the car next to the tender, without any regard to the diligence of the company to secure a safe car.

VI. The court erred in refusing to give the seventeenth instruction asked for by the defendant, which instruction reads as follows :

. " To entitle the plaintiff to recover in this action on the ground that the end of the car next to the tender was defective, or lacking in proper appliances for the safety and the protection of the brakemen, it is necessary for the plaintiff to prove that the company had actual knowledge of such defect or insufficiency, or to show that by the exercise of ordinary care and diligence it could have obtained such knowledge ; for this latter purpose it is not sufficient to simply show that the defect or insufficiency existed at the time of the accident."

1. The effect of refusing this instruction was to make the company absolutely warrant the sufficiency of the car and its fitness for use by the brakemen. That knowledge of such defect must be brought home to the master, or proof given that he was ignorant through his own negligence or want of proper care, is now a fundamental doctrine

with both the American and English courts. *Wright* v. *The R. R. Co.*, 25 N. Y. 562 ; 25 Ala. 667. *Warner* v. *The R. R. Co.*, 39 N. Y. 468 ; 13 Allen, 441 ; *Mobile R. R.* v. *Thomas*, 17 Am. Law. Reg. 154 ; *Noyes* v. *Smith*, 28 Vt. 61 ; *Hard* v. *The R. R. Co.*, 32 id. 473 ; 2 Q. B. 33 ; *Tarrant* v. *Webb*, 18 C. B. 797 ; 30 Mo. 117 ; *Wigmore* v. *Jay*, 5 Exch. 354 ; *Wilson* v. *Merry*, Eng. Law. Rep. for July, 1868 ; *Couch* v. *Steel*, 24 Eng. L. and E. 77 ; *Buzzell* v. *Eaconio Manf. Co.*, 48 Maine, 113, 294 ; *The I. C. R. R. Co.* v. *Love*, 10 Ind. 554 ; *The Mad River R. R. Co.* v. *Barber*, 5 Ohio St. 541 ; *Ryan* v. *The C. V. R. R. Co.*, 23 Penn. St. 384 ; *Harrison* v. *R. R. Co.*, 2 Vroom. 293 ; *Potts* v. *Plunkett*, 9 Irish C. L. 290 ; *Flynn* v. *Beebee*, 98 Mass. 576 ; Sher. and Redf. on Negl. 99, 407 ; Pierce on Railways, 294, 295 ; *Cuthbert* v. *City of Appleton*, 22 Wis. 642.

2. There is no evidence in the case to bring it within the provisions of section 7, of chapter 169 of the laws of 1862. The plaintiff's evidence was all intended to show the negligence of the company, and not that of any of its agents, engineers, or employees.

VII. The court erred in refusing to give the sixth, seventh, eighth, ninth, and tenth instructions asked for by the defendant. While the language of these instructions differs, the principle of law embodied in each is substantially the same ; they are all founded upon the single idea that the servant is as capable and as much bound to take care of himself as the master is to take care of him, and that if he has the same knowledge or same means of knowledge as his master of the condition of the instrumentalities with which he works, he must refuse the employment or be held to have assumed its risks ; he can decline the service, but cannot insist that the master shall change the instrumentalities by which the labor is to be performed. It is the duty of a brakeman to know the con-

dition of the car on which he works. 46 Ill. 99 ; 38 Pen. St. 104 ; 5 Ohio St. 531, 568 ; 20 Barb. 449 ; *Priestly* v. *Fowler*, 3 M. and W. 1 ; 25 Ala. 667 ; *Seymour* v. *Maddox*, 5 Eng. L. and E. 265 ; 20 N. Y. 235 ; *Dynen* v. *Leach*, 40 Eng. L. and E. 491 ; *Assop* v. *Yates*, 2 H. and N. 768 ; 21 Wis. 80 ; *Griffith* v. *Gidlow*, 3 H. and N. 648; *Potts* v. *Plunkett*, 7 Am. Law. Reg., 560 ; Pierce on Railways, 294, 297 ; Story on Agency, § 453 ; Sher. and Redf. on Negl. 87, 88, 94 ; 2 Parsons on Cont. 42 ; *Hayden* v. *The Manf. Co.*, 29 Conn. 548 ; *Buzzell* v. *The Laconia Manf. Co.*, 48 Me. 121, 294 ; *Fifield* v. *R. R. Co.*, 42 N. H. 240 ; *Wright* v. *R. R. Co.*, 25 N. Y. 562 ; *The I. C. R. R. Co.* v. *Love*, 10 Ind. 554 ; *Moss* v. *Johnson*, 22 Ill. 642 ; *Frazier* v. *R. R. Co.*, 38 Penn. St. 104 ; *McMillen* v. *R. R. Co.*, 20 Barb. 454 ; *Loonan* v. *Brockbury*, 28 How. Pr. 472 ; *Hubgh* v. *R. R. Co.*, 6 La. An. 495 ; *The R. R. Co.* v. *Barber*, 5 Ohio St. 541.

VIII. The court refused to give the fourth and fifth instructions, also the one numbered 14½, asked for by the defendant. In this refusal there was palpable error.

1. When a servant for his own purposes and without any orders selects a dangerous and unusual way of performing his master's work, instead of a safe and customary way of doing it, and sustains an injury while thus engaged, the loss must be borne by himself, not his master. 8 Allen, 137 ; 98 Mass. 572 ; 6 Ohio St. 105.

2. It was the province of the conductor and not of his subordinates to determine and control the movements of the train ; for this purpose the conductor and no one else was appointed and paid by the company.

When Greenleaf and the other trainmen, for their own convenience and without orders, made the flying switch, they committed an act of implied disobedience, and violated their duty to their employer. *Wolf* v. *Beard*, 2 C. and P. 373, 473 ; Sher. and Redf. on Negl. 380 ; 29

Conn. 208; 24 Vt. 487; *Felch* v. *Allen*, 98 Mass. 572; *Timmons* v. *The Railroad Company*, 6 Ohio St. 105; *Wilson* v. *The City of Charlestown*, 8 Allen, 137; *Brown* v. *Maxwell*, 6 Hill, 594; *The Railroad Company* v. *Fay*, 16 Ill., 558; *Potts* v. *Plunkett*, 9 Irish Com. Law. 290; *McNeil* v. *Wallace*, 48 Maine, 121; *Senior* v. *Ward*, 102 Eng. Com. Law. 385.

IX. The court erred in refusing to give the eleventh, twelfth, thirteenth and fourteenth instructions asked for by defendant. The evidence upon which these instructions were based is explicit, that deceased could have easily stayed on the tender and got down on the ground after the engine had left the car, and then got up on the car on the ladder when it came along; that is very frequently done by brakemen in making flying switches, and they should do so when there is nothing to hold on to on the car.

If the car was covered with ice and snow and had none of the appliances intended for the security of brakemen, but was wholly deficient in that respect, it was palpable imprudence or rashness for the deceased to attempt to get upon said car except in the manner shown by the evidence above quoted. 6 Ohio St. 105; 102 Eng. Com. Law. 385; 19 Wend. 399; 29 Conn. 308; 14 Allen. 429.

X. The defendant was entitled to a judgment on the special verdict rendered by the jury.

The special findings show that at the time of the accident a flying switch was being made, without any orders from the conductor, having been agreed upon by Greenleaf and the other trainmen in his absence; that it was made by them for the purpose of getting off duty as soon as they could, and to avoid waiting for the other train to move away; that Greenleaf made the uncoupling, and afterward fell and was killed by the cars running over him; that the end of the car uncoupled by deceased had

ice and snow on it, and was deficient in all the appliances used on railroads for the safety of brakemen.

If the alleged imperfections of the car had any connection with Greenleaf's death, then the above facts found by the jury necessarily constitute contributory negligence.

XI. The court erred in not requiring the jury to give more specific answers to the sixth, tenth and eleventh questions propounded to them at the request of the defendant. Each of these had an important bearing upon the matter of negligence, and the defendant had a clear legal right to a special and distinct finding upon each. Rev. § 3079.

*H. A. Wiltse* and *H. B. Fouke* for the appellee:

I. The question of negligence is either a pure question of fact for the jury, or it is a mixed question of law and fact, which is also a question for the jury. Sher. and Redf. on Negl. 8, § 11 : *Beers* v. *Housatonic R. R. Co.*, 19 Conn. 566 ; *Donaldson* v. *The M. & M. R. R. Co.*, 18 Iowa, 280, 288 ; *Gordon, Admr.*, v. *Pitt*, 3 id. 385 ; *Russ* v. *The Steamboat War Eagle*, 14 id. 363 ; *McKay* v. *Thorrington*, 15 id. 25.

Hilliard on Torts, volume 2, page 340, says : " New combinations of facts are constantly occurring, which call for modification of principles previously supposed to be settled, and the prevailing tendency of the courts seems to be to leave questions to the jury, as questions of fact, instead of deciding them as matters of law."

II. The defendant was guilty of triple neglect, as follows :

1. In not furnishing a caboose car, as other roads ordinarily do ; by which failure Greenleaf was exposed to cold and storm, and became so benumbed that he fell and lost his life.

2. It failed to use ordinary care in furnishing a car with suitable and safe appliances. The jury have especially found this point.

3. In not providing by suitable rules and regulations for the passenger train to haul out of the way so as to permit the freight train to be set upon the side track, and thereby render the making of a flying switch unnecessary.

III. With regard to the third of the above points, the good sense of the court can readily perceive the absolute necessity of a thorough system of rules and regulations for the preservation of human life. The neglect in this particular seems to have been chronic, as both the testimony and the special verdict of the jury show flying switches to be customary and usual. This kind of switch should never be made. Sher. and Redf. on Negl. 499, 500.

This court has held that railroad companies are bound to use ordinary care and diligence in providing for the safety of their employees. *Hunt* v. *N. W. R. R. Co.*, 26 Iowa, 363.

The company was guilty of negligence in not making such rules and regulations as would require the passenger train to haul out of the way, so that the freight train could be put upon the side track, without making a flying switch. *Vose* v. *L. & Y. Railway Co.*, 2 Hurl. and Nor. 728, 731, 732 ; *Donaldson* v. *M. & M. R. R. Co.*, 18 Iowa, 280 ; *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio, 415, 431, 432, 438.

IV. The company was guilty of negligence in not providing such means and appliances as would enable brakemen to discharge their duty with reasonable and usual safety, and in not providing such means and appliances as are common and usual on other roads.

" The master, indeed, is bound to use ordinary care in providing suitable structures, engines, tools and apparatus, and in selecting proper servants, and is liable to

other servants in the same employment if injured by his neglect of duty. But it makes no difference whether the master is an individual or a corporation; in either case he is responsible to his servants for his own negligence." *Gilman* v. *Eastern R. R. Corporation*, 10 Allen, 233, 236 ; *Same Case*, 13 id. 433, 441.

" It is the duty of every employer to use all reasonable precautions for the safety of those in his employment, by providing them with suitable machinery and keeping it in a condition not to endanger the safety of the employed." *Buzzell* v. *Laconia Manf. Co.*, 48 Me. 113.

"And the servant has a right to understand that the master will exercise that diligence in protecting him from injury, and also in selecting the agent from which it may arise." *Ryan* v. *Fowler*, 24 N. Y. 410, 415 ; *Noyes* v. *Smith*, 28 Vt. 59, 64 ; *Patterson* v. *Wallace*, 28 Eng. Com. Law, 50 ; *Cayzer* v. *Taylor*, 10 Gray, 274 ; *Dixon* v. *Rankin*, 1 Am. Railway Cases, 569 ; *Chamberlain* v. *Mil. & Miss. R. R. Co.*, 11 Wis. 238.

V. It may be said the company did not know of the delinquencies and defects which caused the accident. The company is bound to know this, if by the exercise of ordinary care it could have found it out. *Ryan* v. *Fowler*, 24 N. Y. 410, 415 ; *Gilman* v. *Eastern R. R. Co.*, 10 Allen, 233 ; *Same Case*, 13 id. 433, 441 ; Sher. and Redf. on Negl. 106, § 91 ; 46 Ill. 99 ; Sher. and Redf. on Negl. 11, § 13.

VI. Again, it is alleged that Greenleaf did know or ought to have known that the car was insufficiently equipped. But the jury in their special verdict find the car deficient in all the usual appliances, and answer that they do not know whether or not Greenleaf knew of this deficiency ; in other words, that there was no evidence that he did know it. But admit that he positively did

know it; this would only be a circumstance to be submitted to the jury.

The servant of a railroad company, while coupling cars, stepped into a hole in the planking of the track and was injured. The hole had existed some two months with the knowledge of the plaintiff. The supreme court decided that he was entitled to recover, notwithstanding his previous knowledge. *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441, 449.

This question of contributory negligence is peculiarly a question for the jury. In the above entitled case, page 450, the court say : " Nor do we think it was any less a question of fact to be decided by the jury, because it appeared that the plaintiff had previous knowledge of the defect in the road which caused the accident. *Reed* v. *Northfield*, 13 Pick. 98 ; *Smith* v. *Lowell*, 6 Allen, 40. This certainly was a circumstance to be taken into consideration, but by no means a decisive one."

In the case of *Fox* v. *Sackett*, 10 Allen, 535, the plaintiff was driving a gentle horse on a slow trot in the night, and struck a wagon which he had seen there during the day, *Held*, " that it cannot be held as a matter of law, that the plaintiff was so careless as to preclude his recovery, but the question should be submitted to the jury."

VII. In determining what would be negligence on the part of the workman, reference must be had to his limited means of knowledge, to his ignorance of machinery and processes upon which he is employed, and to the fact, that men, whose business is the lowest forms of human labor, are not given to thought, reflection and foresight ; some one must usually think and reflect and foresee for them. And, therefore, it is well said in *Noyes* v. *Smith*, 28 Vt. 59, that it is the duty of the master to exercise care and prudence, that those in his employment be not exposed to unreasonable risks and dangers. And the servant has a

right to understand that the master will exercise that diligence in protecting him from injury. *Connelly* v. *Pollion*, 41 Barb. 369.

The court further held in this case that the previous knowledge of the defect that caused the accident made no difference.

In the case of *The Louisville and Nashville R. R. Co.* v. *Collins*, 2 Duvall (Ky.) 114, a workman lay upon his back under an engine repairing it, and the engineer started the engine, which ran over and severely injured the workman. The party injured was directed by the engineer to block the wheels of the engine before commencing work, but he neglected to do so, and it was contended by the defendant that his negligence contributed to the injury. We quote from the syllabus : "When, on a question of negligence, the testimony is conflicting, the jury have a right to decide the character of the negligence, although the plaintiff suing for an injury resulting from the gross negligence of the defendant, may have been guilty of negligence, if, nevertheless, the injury might have been avoided by the proper care of the defendant. Such co-operating negligence of the plaintiff will not exonerate the defendant." See also *C. C. & C. R. R. Co.* v. *Keary*, 3 Ohio St. 172 ; *Keegan* v. *W. R. R. Co.*, 8 N. Y. 175 ; *McGatrick* v. *Wason*, 4 Ohio St. 566 ; *Clayards* v. *Dethick*, 64 Eng. Com. Law, 437.

VIII. The dictates of reason and every instinct of self-preservation teach us that men are generally careful of their own lives. In the case of *Allen* v. *Willard*, 57 Penn. St. 380, the court say : "The natural instinct which leads men in their sober senses to avoid injury and preserve life, is an element of evidence. In all questions touching the conduct of men, motives, feelings and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries.

Adding these to the circumstances of this case, we cannot say that the evidence was insufficient to go to the jury."

The court below in this case charged the jury, that "if you find that the deceased proposed to make the flying switch and volunteered to make the uncoupling, knowing the construction of the car next to the tender, then you should find for the defendant."

This was a very strong charge in behalf of the railroad company. But the jury probably thought that a brakeman does not *volunteer* to do an act which it was his duty by the every day routine to do; that he was acting in obedience to implied orders. The same doctrine is repeated by the court with slight variations, but the jury find the fact that he was in the regular discharge of his duty, and that he was making the switch in the customary and usual way.

IX. Defendant seeks to set aside the verdict upon the theory that the court will not sustain a verdict of $8,000.

The case of *Sherman* v. *The Western Stage Company*, 24 Iowa, 515, is cited. In that case it was conceded by counsel on both sides that the damages were in part exemplary, and the plaintiff offered to remit a portion in order to save the verdict. Five thousand dollars may be an adequate compensation for the life of a woman of middle age.

In the present case, the deceased was a man of good morals, good habits, good health, was twenty-three years of age, and had an expectation of life of about forty years. He had been deputy sheriff, had been in the army, where he was frugal and sent his money home. He was receiving $45 per month, and in a few days was to have received $50 per month.

This compensation for the period he would have lived would have amounted to $24,000. The jury allowed

one-third of this amount. There is not one woman in five thousand in the state that is earning $50 per month. There was probably no evidence that Mrs. Sherman was one of the exceptions.

In a case reported in note 2 to Angell on Carriers (3d edition), 541, 542, where the party killed was a lawyer, 38 years of age, it is said : "Life insurance tables were consulted, and the average length or duration of lives beyond that period was ascertained." The jury awarded nearly $70,000 damages.

In another case (see the note named above) the jury awarded $12,000 damages for the killing of a boy twelve years of age by a railroad company.

X. But it may be said that the statute of New York limits the damages in case of death to $5,000. The statute of Connecticut and the statute of Iowa have neither any limit of amount. What the legislature have purposely left out cannot be supplied by the court.

"Under the statute of Connecticut the damages for the dead would be limited only by the verdicts of juries." Note, Angell on Carriers, 544.

If the general assembly of Iowa had intended to limit the amount of damages, it could have done so by copying New York. It chose rather to copy Connecticut.

In the case of *Shaw* v. *The Boston & Worcester R. R. Co.*, 8 Gray, the plaintiff, a woman, recovered a verdict for personal injuries inflicted by the carelessness of the company, in the first trial, $15,000 ; second trial, $18,000, and in the third trial, $22,250. A this point the court refused a further trial, ordering judgment on the verdict.

In the case of *Schmidt* v. *The Milwaukee & St. Paul R. R. Co.*, reported in Western Jurist for August, 1869, 245, an infant, 18 months of age, got upon the track of defendant, in consequence of its road not being fenced,

and lost an arm. Verdict for plaintiff of $8,000. The supreme court refused to set it aside as excessive.

This case was tried nearly a hundred miles from where the accident happened, and from where the friends and relatives of deceased reside. There is not the slightest reason for suspecting that the jury were governed by any other influence than the evidence in the case.

In actions of tort, such as personal injuries, slander, seduction, etc., there is no absolute rule of damages. The good sense of the jury must govern.

WRIGHT, J.—Appellant assigns twenty-five errors. We cannot undertake to notice them in their order, and yet

1. NEGLIGENCE: when a question of law for the court. shall endeavor to so present our views upon the questions legitimately arising, as to meet and dispose of the several points argued with so much ability by counsel.

I. And first as to defendant's motion, after the close of the testimony, asking the court to instruct the jury to find in its favor, substantially upon the ground that there was no evidence to justify a verdict for plaintiff. In overruling this motion there was no error. Assuming the correctness of defendant's premises: first, that the court should grant such motion in all cases where it would feel bound to set aside a verdict for plaintiff, as often as rendered, as being against the evidence; and second, that whether a party has or has not been guilty of negligence in a particular case, is a question of mingled law and fact, but that when the facts are undisputed or conclusively proved the question of negligence must, as a rule, be decided by the court—we say, conceding these premises, defendant's case is not one justifying the conclusion which he would deduce therefrom. For to reverse the action of the court below, on this motion, we should be compelled to find and say that upon the testimony the jury could not find

under the law, for plaintiff, or that the facts were so clear and indisputable, as that, in judgment of law, there was no negligence on part of defendant, or if any, the proof was equally clear that defendant, by his want of care, had contributed to the injury. And if we applied defendant's rule to this case, so we could to almost every one tried to a jury. The facts are disputed; the testimony not a little conflicting. There was scarcely any one fact which could be said to be ascertained or undisputed. The negligence imputed by each party to the other, or the facts upon which it was claimed to depend, were disputed, and thus there was raised by the clear current of the authorities, a mixed question of fact and law. The law is for the court, and this law the jury take from the court to apply to the facts when they have found them. In such cases the jury have a duty to perform, and the court should not undertake to invade their province. A party has no right under such circumstances, upon motion, to withdraw the case from their consideration. When it is said that questions of care and diligence, after the facts are proven, are for the court, it is not meant simply, after the evidence is concluded. Proof is one thing, evidence another. And the cases to which the rule has been applied show what is meant, and how inapplicable it is to the case at bar. Thus, in 3 Allen, 22 (*Todd* v. *Railroad Co.*), plaintiff's arm, while protruding from the window of a car in which he was riding, was injured, and the court esteemed it its duty to decide upon the legal effect of such an act, and this, because there was no point in dispute as to the facts. But see *Spencer* v. *Milwaukee Co.*, 17 Wis. 487. So in cases of stepping on or off a car while in motion (as in *Tucker* v. *Trenton Co.*, 6 Gray, 64; *Nichols* v. *Sixth Av. Co.*, 38 N. Y. 131; *Jeffersonville Co.* v. *Hendricks*, 26 Ind. 228); or when there is a platform for the landing of the passengers, and

a passenger leaves on the other side (as in *Penn. Co.* v. *Zebe*, 33 Penn. 318) ; or when one bereft of sight or hearing goes on a railroad track without assistance or aid, or for any one to go thereon without exercising those powers of vision which would have enabled him to avoid an approaching train (*Wilcox* v. *R. & W. R. R. Co.*, 9 N. Y. 358 ; *Gonzales* v. *N. Y. & H. Co.*, Legal Journal, vol. 7, 120) ; or as in Massachusetts (*Galragan* v. *B. & L. Co.*, 1 Allen, 187), where one attempts to pass between cars, completely blocking a highway. See *Roach* v. *Lloyd*, 31 Penn. 358 ; also *Wyatt* v. *G. W. Co.*, 6 B. & S. 709. And thus, we repeat, as might be shown from numberless cases, it is apparent that the rule under consideration is not applicable to cases like that before us. But that these may be more clearly seen, let us refer—which may be as well done here as anywhere—to some of the facts of the case.

The accident occurred at Waterloo, Black Hawk county, in October, 1868, between four and five o'clock in the morning. The train left Dubuque the previous evening about six o'clock. The night had been cold, the morning was damp and disagreeable, and it had snowed, or the mist had frozen. It was a freight train of six cars, but a caboose car, which is usually attached to such a train, was wanting. Nor was there any stove in either car, where the employees could warm. As this train approached the depot, it was found that the " night express " was on the main track. The freight was therefore stopped some six hundred feet east, and remained some thirty or fifty minutes for the passenger train to get out of the way. As the freight was not to go beyond this point, the engineer and brakemen, including decedent, concluded to make what is known as a " flying switch " and thus place their train on the north side-track, where it would be out of the way and where it belonged. But

for the " night express," the freight would have been run to the west end of the north switch and backed on to it, which was the usual way of placing trains upon the side-track ; though there is testimony tending to show that " the making of flying switches was of every day occurrence." The conductor of the freight train left it soon after it stopped, and went to the depot. There is testimony, however, tending to show that he was aware that the employees were making this switch—that he was near the train at the time and signaled the engineer to stop as soon as he discovered the accident. He knew nothing whatever, however, of the agreement between the engineer, fireman and brakemen to thus dispose of the train, nor did he direct the movement of the train.

A flying switch is made by uncoupling the cars from the engine while in motion, and throwing the cars on to the side-track, by turning the switch, after the engine has passed it, upon the main track. In this instance, one brakeman attended to the switch, while decedent's intention was to draw the pin between the tender and the cars. In doing this, he was thrown, or was compelled to jump, from the end of the car, upon which it is believed he was standing or to which he was holding ; the six cars passed over his body and he was instantly killed. The jury could reasonably conclude (as they find in their special verdict) that the car next to the tender was wanting in the usual, if not all, the appliances commonly used by other railroad companies for the safety and protection of brakemen, and this, because it was lacking in a platform, a brake rod, ladder or handle-rod on the end of the car, and other appliances spoken of by the witnesses. Plaintiff's theory is, that defendant was negligent in three respects : First, in not furnishing a caboose car, whereby deceased was necessarily exposed to the cold and storm,

and became so benumbed that he fell and lost his life. Second, in not furnishing a car with the necessary and usual appliances for the safety of those whose duty it was to assist, as decedent did, in uncoupling the cars. Third, in not providing by rules for the removal of the passenger train, within a reasonable time, thus permitting the freight to be set upon the side-track in the usual way, without resorting to the flying switch.

Under these circumstances and upon these facts it would certainly be going a great way, and beyond any case brought to our attention, to say that the facts were ascertained and settled, and that nothing but a question of law remained, which it was for the court to decide. And this remark and this thought applies to and disposes of defendant's instruction to the effect that plaintiff had not introduced sufficient evidence to entitle him to recover, and that the verdict should, therefore, be for defendant. And see *Donaldson* v. *M. and M. R. R. Co.*, 18 Iowa, 280 ; *Sherman* v. *Western Stage Co.*, 24 id. 515. These cases are in accord with the authorities before cited, and fully sustain the conclusion, that the court below properly overruled defendant's motion and refused said instruction. Shearman & Redf. on Negl., § 11, and cases cited in note 3 ; *Snow* v. *Housatonic Co.*, 8 Allen, 441.

II. Defendant asked that the jury be required to answer specifically fifteen interrogatories. All of these were responded to but two, and as to them the answers were that they " did not know." Because these interrogatories were not answered, and because others were answered, as was claimed, evasively, defendant, before the reading of the general verdict, objected to its acceptance, and moved that the jury retire and be required to respond specifically to all the interrogatories. This motion was overruled,

*2. JURY AND VERDICT : special findings : practice.*

the general verdict was received, and of this the defendant complains. As we could not, except in a case of clear abuse, interfere with the action of the court in refusing to return a jury to their room when they had reported their inability to agree upon a general verdict; neither will we where they are unable to respond to specific interrogatories. And this more especially, when the pertinency or materiality of the answer sought to be elicited, is not apparent. And still more so, when the general verdict is inconsistent with any other than one answer to such questions. In this case, the facts bearing thereon not being before us, we do not know but the court, from the length of time the jury had been engaged in their deliberations, could well say it was idle to keep them longer together, with the hope of obtaining a more complete or satisfactory return or verdict. The other answers were sufficiently definite and clear.

III. The body of this case, however, is found in alleged errors, in giving and refusing instructions, and to these 3. RAILROAD: we now turn our attention. All defendant's injuries to employees. instructions (eighteen in number) were refused, and this, as we suppose, either because they were held inapplicable, not to contain the law, or to be covered by the instructions in chief. Very many questions are raised therein, and yet they may and must be disposed of briefly.

The sixth paragraph of the court's charge held it to be defendant's duty to provide cars with such appliances as are best calculated to insure the safety of employees ; and if a ladder on the end of a car, or a handle, as described by the witnesses, would be a protection to life better than the car which produced the accident, then it would be defendant's duty to furnish a car with such appliances.

To this it is objected, that it holds the company to the

exercise of the highest degree of skill of which human effort is capable, and, in the second place, that it assumes that the car produced the accident.   In neither of these views can we concur.   The duty of defendant was to use all reasonable precaution for the safety of his employees. And among other things it was bound to furnish suitable machinery—materials sound and safe—and to keep them in such a condition as would not endanger their safety ; such as were least likely to do or cause injury.   This, however, does not imply that it is the master's duty to use extraordinary care and diligence ; nor that he is bound to obtain all the so-called improvements in machinery and appliances, for the use of those in his employ, and we do not by any means intend so to hold.   But if a ladder on the end of a car is better calculated to insure safety than a smooth surface without any means of ascending the car to apply the brake after the hazardous work of uncoupling the train, then it should be provided.   And looking at the language of this instruction it means no more than this, and especially so in the light of the testimony.   It was shown that a ladder or handle was placed upon the end of cars generally ; that nothing of this kind was upon this car ; and if those would afford a better protection to defendant's employees, then they, or none of them, should have been provided.   It was never meant, nor is this the fair construction of the language used, that defendant was bound to use the highest skill, the greatest foresight, the most extraordinary care in procuring the very best appliances, but rather those appliances which were reasonably best calculated to insure the end proposed, as compared with those furnished.

Then as to the language, " the car which produced the accident," this means no more than to designate the one which plaintiff claimed was defective in its construction. This is no more erroneous than if the court had referred

to this as the "train producing the accident," or "this car," or the like. No·reasonable jury could have been misled thereby. A court is not bound to the exercise of such extraordinary care and caution in the selection of its language as to prevent all possibility of misapprehension. It can well be assumed that the purpose and object of the language employed, when not fairly calculated to deceive and mislead, will be correctly understood and applied by the jury.

The tenth instruction given by the court was this : "If you find that the deceased was in the discharge of his duties, under the control of a superior officer, or agent of the defendant, and that the accident was occasioned by reason of the defective construction of the car next to the tender, or the improper manner in which the train was made up, or from having no way car or caboose attached to the train, and without the deceased's fault, then you should find for plaintiff."

Upon several grounds we are of the opinion that this instruction was calculated to mislead, and hence was erroneous. It very clearly appears that it is the duty of a conductor of a train to direct its movements ; and it is just as well shown that the deceased proposed this flying switch, and that the other trainmen agreed to it for their own accommodation (because they desired to get rid of the train, and some of them, the deceased at least, wished to go to a station north of Waterloo that evening), and in the absence of the conductor. There was no superior officer there at the time, and hence he could not have been acting under the control of such officer. That the conductor had knowledge of their work, and requested the engineer to stop, after the accident, is quite a different thing. Then, too, we have searched in vain for testimony that this accident occurred by reason of the improper manner of making up the train, or the

absence of a way car. If by the "improper making up of the train" is meant the defective car next to the tender, then this thought is covered by other language of the instruction. And what was meant we cannot tell, unless it refers to either the place of this car in the train, or the absence of the caboose. If any thing else, then there is no scintilla of evidence upon which to base it. And if to the want of the way car, then it was based, doubtless, upon the thought that there being no stove, the deceased, by reason of the cold and his exposure was so benumbed as that he fell and lost his life. But as defendant's counsel well suggests, for aught that appears the deceased was entirely warm and comfortable; in no manner suffering from the influence of the frost and snow. Then, too, if thus cold, it was no part of his duty to *voluntarily* undertake to make the switch. In doing so he would be guilty of such negligence or want of care as *prima facie* would defeat a recovery; and especially so in view of the snow and ice on the car. Having no part in making up trains, as the testimony shows he had, we grant, a right to presume that it was made up properly, and as such trains are usually made up, including a caboose and proper appliances for his safety. And if, by reason of any neglect in this respect, he was necessarily exposed to danger, and injury followed, the company might be liable. Hence, if in obedience to the direction of the conductor or engineer in applying the brakes, when compelled and required for the safety of the train and human life, he should, by reason of incapacity brought on by the absence of the caboose and a fire, suffer injury, we could not say that he would be remediless. But if in this condition, the greater caution was demanded at his hands. And to say that when he acts at his own instance and without the command of a superior or a pressing emergency, he may hold the com-

pany liable for a condition of the hands or feet produced by cold—a condition which, as is argued, might have been avoided by a way car and stove—would trace back the chain of causes too indefinitely, and far beyond what the law will undertake to do.    In such a case the negli-gence of the company in not attaching the way car would hardly be the proximate cause of the injury of which plaintiff complains.    The law looks to the person or agent who is the proximate and not the remote cause of the wrong or injury.    If but for such neglect (the omission of the car) the injury would not have happened, then, though it may not have been the sole and immediate cause, it still might, in the estimation of the law, be prox-imate, and especially so if this and the other circumstance or circumstances are connected in the order of events with the injury.    Sher. & Redf. on Negl., § 10.

And now of a few other matters generally.    The charge of the court is for the most part quite as favorable to defendant as could be reasonably asked.    So, too, it covers very much of the ground of defendant's numerous and quite lengthy instructions.    It is unusually clear and specific in the enunciation of general rules, wanting, how-ever, it must be added, in a reference to the facts and the application of the law to this, instead of cases of negli-gence generally.    The case is one which calls peculiarly for particularity in the statement of rules, as applicable to the theories of the respective parties.    And hence, while the charge in its general language covered what was asked by defendant, it might still have been well to have given some of them either as asked, or in some other manner, to have brought more directly to the attention of the jury the rights, duties and liabilities of the com-pany and its employees.    And the same is true as to some rules of evidence pertaining to such cases.    With-out undertaking to point out in detail how this

might and should have been done, we conclude by stating some matters which may and should be observed in the next trial.

If this car was wanting in the appliances referred to by plaintiff at the time of its construction, and so continued when put and used upon the road, it would not be necessary to show further notice. or knowledge thereof on defendant's part, or that of its agents, in order, thus far, to fix liability. If, however, it was at one time safe and convenient, that is, had all the conveniences reasonably necessary for the safety of employees, and they were removed by accident or otherwise, then it should be shown that defendant either had notice thereof, or ought to have had, by the use of ordinary care, before an employee could claim liability on account of such defect. When once this knowledge is shown, or what is the same thing, culpability in lacking knowledge, if it is claimed that the injured employee also knew it, this knowledge by the employee, and that the service was commenced or continued with such knowledge by him, must be shown by defendant. The burden in such cases is put upon the employee, but he is not bound to show, in the first instance, his lack of knowledge. Sher. & Redf. on Negl., § 99. If the danger or defect is known to the employee, or might have been known by the use of ordinary care, and there is no inducement to remain, by promises to remove, to secure or remedy the same it would seem but reasonable that he assumes the risk and should not recover.

The burden of proof is upon the plaintiff to show both the negligence of defendant and his own care. But he is not bound to do more than raise by his proof a reasonable presumption of negligence. If the facts proved make it probable that the defendant neglected its duy, it is for the jury to decide between them.

Thus, if it appears that a brakeman, engaged as this one was, with cars suitably equipped, by the exercise of due care had from time to time discharged the duty without injury, this might raise a fair presumption against defendant, and it would be for it to show that the employees' negligence, or some circumstance which it could not control, contributed to or caused the accident.

We are aware that the cases are not entirely in accord as to the duty of plaintiff in these actions to show himself without fault. In this state, however, it is believed the rule is as stated above. Thus in *Donaldson* v. *M. & M. Co.*, 18 Iowa, 281, where plaintiff's intestate was killed by the cars while crossing the track, it was held to be incumbent on plaintiff to show by direct testimony, or by presumptions arising from facts and circumstances, that the deceased was all the time rightfully, and not negligently or improperly, upon the track. And in *Spencer* v. *Ill. Cent. R. R. Co.*, *post*, 55 ; *Rusch* v. *City of Davenport*, 6 Iowa, 443 ; *Hanlon* v. *City of Keokuk*, 7 id. 488 ; where the general doctrine is very fully stated and recognized.

And finally, though decedent knew of the defective car, if he acted under instructions and directions of a superior, the action would by no means thereby be defeated. Under such circumstances, compelled as he necessarily would be to act with promptness and dispatch, it would be most unreasonable to demand of him the thought, care and scrutiny which might be exacted where there is more time for observation and deliberation. Thus, if a ladder is usually found upon such cars, in the haste necessarily attendant upon uncoupling cars and stopping the train, he was not bound to deliberate and settle in his mind that a like means of ascending the car was on this one, though he knew by prior observation that it was wanting. And it was upon this principle, in

*9 —— where employee acts under instructions.*

part at least, that *Snow* v. *Housatonic Co.*, 8. Allen, 441, was ruled. There the plaintiff stepped into a hole, while uncoupling cars, by which he was injured, and though he had previous knowledge of this hole, he was held entitled to recover. And so of other cases which might be cited. And see *Reed* v. *Northfield*, 13 Pick. 98; *Smith* v. *Terrill*, 6 Allen, 40.

It is always competent for the jury to take into consideration the hazardous nature of the work in which brakemen are employed; their means of knowledge; what they are reasonably required to know, in the nature of their calling, of machinery; the thought and reflection demanded or expected of such persons; their just expectation that the company will exercise due care and prudence in protecting them against injury; and to give due weight to those instincts which naturally lead men to avoid injury and preserve their lives. And hence, as these instincts, motives and feelings may properly constitute evidence for the consideration of the jury (*Allen* v. *Willard*, 57 Penn. 380), when, as in this case, it appears that the deceased was last seen proceeding with becoming care, with the usual light, to uncouple the cars, we say, under such circumstances the jury might well presume care and caution on his part to save himself from harm. Upon such proof or in such a case how the deceased got under the cars, or what caused him to fall, is a question for the jury. To require a plaintiff to even show due care in such cases would in many instances impose the duty of showing negatively that he did not stumble by carlessness, or jump voluntarily into danger. How clear, and the nature of, the evidence to show a want of negligence, must of course depend upon the time, place and surroundings of the parties, as well as many other matters which we need not enumerate, but which

will readily occur to the non-professional as well as to the legal mind.

The judgment below is reversed, and the case remanded for trial *de novo*.

Reversed.