# Richmond.

C. & O. RAILROAD CO. V. LEE.

MARCH 22d, 1888.

Absent, Richardson, J.

1. RAILROADS—*Employees—Negligent injuries—Recovery.*—Plaintiff is bound at least to raise a reasonable presumption of negligence on the part of defendant. Then he must recover, unless plaintiff himself was guilty of such negligence, as without it, the injury would not have happened; and even then, unless the defendant could not, by the exercise of care, have avoided the consequences of the plaintiff's negligence. But the employee accepts the service subject to the risks incident to it.

2. IDEM—*Case at bar.*—Plaintiff was injured whilst uncoupling a car from standing cars, by a pier engine and coal train running into said cars. When he went in between those cars, he saw the engine stalled on the up-grade and the train only about twenty feet from those cars. He was delayed by a tight pin. The engine gave no warning by bell or whistle, but its exhaust as it climbed the grade could be heard a long way:

HELD:

    Plaintiff cannot recover.

Error to judgment of circuit court of Warwick county, rendered December 20th, 1886, in an action of trespass on the case, wherein Parker Lee was plaintiff and the Chesapeake & Ohio railroad company was defendant. Verdict and judgment being against the defendant company, it brought the case here on writ of error and *supersedeas.* Opinion states the case.

*H. T. Wickham, A. S. Segar,* and *Wm. J. Robertson,* for the plaintiff in error.

*P. W. McKinney* and *Wm. Wood*, for the defendant in error.

Lacy, J., delivered the opinion of the court.

This was an action of trespass on the case for injuries to the person by the defendant in error against the plaintiff in error. The defendant in error was an employee of the plaintiff in error, engaged in uncoupling, weighing, and unloading coal-cars on the coal-pier of the railway company at Newport News. At the trial it was proved, as is shown by the certificate of facts in the case, that the plaintiff, Lee, was engaged on the 3d of May, 1884, about his business, under and in obedience to the orders of his superior, the foreman of the coal pier, when the pier-engine ran the train against the standing cars, from which he was uncoupling a car, knocking a pin which was tight up with another pin, without warning or signal; and he was thrown down and so hurt that his leg had to be amputated; and that he is still a great sufferer from the injury, besides being no longer able to do work which is remunerative; that Lee saw the engine and engineer every day, and that he had always been engaged about this work since he had been in the company's employment; that the engine and engineer had been so employed all day long every day, coming backward and forward; that the orders received by Lee on the day of the injury were general orders, in the usual course of affairs; that the engine, with the cars, that hurt him by setting the standing cars in motion, was stalled on the up grade on the pier with the loaded cars it was bringing up when he got between the cars; that the cars to which the engine was attached were as far from the train he was uncoupling as forty feet, and that Lee saw the engine when he went between the cars, and the engine was behind the cars pushing them up in the usual way; that the coupling-pin in question was tight, and he was delayed in his work of getting it out; that there were several cars standing between him and the train coming up, and that there were not

more than fifteen or twenty feet between the standing cars and
the train coming up when he went in to do the uncoupling in
the due course of his business. It is proved that the engine
coming up with these cars on the pier did not ring a bell or
blow a whistle; but it is also proved that these had been dis-
pensed with as to this yard or pier engine, as they had ceased
to be useful, and had proved to be only confusing, being con-
stantly sounded as they moved back and forth upon and off the
pier, and being unnecessary because the engine coming up grade
on the pier, with its heavy load, made a great noise by what is
called its "exhaust," or the rush of escaping steam through
the smoke-stack, which could be heard a great distance, and
attracted more notice than either bell or whistle, or both; and
that, with its noise and efforts as it struggled up this grade
with its load, actually attracted the attention of Lee when its
train, coming towards the standing cars in the usual way, was
within fifteen or twenty feet of them. The court below refused
to give certain instructions asked for by the defendant, and
gave certain others asked for by the plaintiff, and others still
on the court's own motion; to all of which the defendant com-
pany excepted in due form. The jury rendered a verdict in
favor of the plaintiff for $2,500, and the defendant company
moved the court to set aside the verdict and grant a new trial.
But the court overruled this motion, and rendered judgment
in accordance with the said verdict; and the defendant again
excepted, and applied to this court for a writ of error, which
was awarded by one of the judges.

The error assigned which will be first considered, is the
refusal of the court to set aside the verdict of the jury, and
grant the defendant a new trial. As we have seen, the plain-
tiff was an employee of the defendant company, engaged in
uncoupling cars loaded with coal, and weighing and emptying
them. He was injured while engaged in his usual every-day
employment, and his right to recover damages from the defend-
ant company must depend upon the question, whether the

company was guilty of negligence. If the injury was occasioned by the negligence of the company, and solely by its negligence, there can be no doubt about the plaintiff's right to recover damages for the injury; and the first point necessary to be established is that the injury was caused by the negligence of the company. But if there was negligence on the part of the plaintiff, which contributed to the injury, the law will not apportion the fault. There can be no recovery for an injury caused by the mutual fault of both parties. The mere negligence of the plaintiff, however, would not disentitle him to recover, unless it were such that, but for that negligence, the misfortune would not have happened; nor if the defendant might, by the exercise of care on his part, have avoided the consequences of the plaintiff's negligence. *N. & W. Railroad Co.* v. *Cottrell,* 83 Va., 512, and cases cited; *V. M. Railway Co.* v. *White, ante,* p. 498. The burden of proof is upon the plaintiff to show the negligence of the defendant; but he is not bound to do more than raise by his proof a reasonable presumption of negligence. If the facts proved make it probable that the defendant neglected its duty, it is for the jury to decide between them. *Greenleaf* v. *Ill. Cen. Railroad Co.,* 29 Iowa, 47.

When a servant enters upon an employment, he accepts the service subject to the risks that are incident to it. An employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he had opportunity to ascertain. If a man chooses to accept employment, or to continue in it, with the knowledge of the danger, he must abide the consequences, so far as any claim against his employer is concerned. It is the duty of the company to exercise all reasonable care, to provide and maintain safe, sound, and suitable machinery, roadway, structures, and instrumentalities, and it must not expose its employees to risks beyond those which are incident to the employment, and were

in contemplation at the time of the contract of service; and the employee has a right to presume these duties have been performed. It is not claimed that there was any defect in the cars, road-bed, machinery, or other apparatus of the defendant company. But the charge is that the company's agent, the conductor of the coaling or shifting engine which was used to bring up numbers of coal cars at a time, leave them, and go for more, was guilty of negligence in not ringing the engine bell, as he came along up, bringing the loaded cars to be weighed and emptied. But as the engine was going back and forth all day long, through the yard and on the pier, the ringing of the bell was found to signify but little, as it would be ringing incessantly, and would therefore give notice of nothing but the general fact that it was about its work of bringing up cars, and was found only confusing. The fact that the engine had a loud exhaust, which grew louder as it climbed the grade with its burden of loaded cars, was held to be signal enough of its approach, as it could be distinctly heard for half a mile. And the evidence in this cause shows that it did attract the attention of the plaintiff when within forty feet of him with the end of the train it was pushing, and the train coming up was within fifteen or twenty feet of the standing cars, when the plaintiff went in among them of his own motion to uncouple one of them from the rest. It was an act of negligence for the plaintiff to go in to uncouple these cars with an approaching heavily loaded train close at hand. A moment's delay would have saved him from the injury, and without this indiscreet act on his part the injury would not have happened. He not only ought to have known that the engine, with its immense load, was coming up to the standing cars, but he did undeniably know it, for it was just what it was and had been doing all day long, every day since he had been in that service. If his judgment was that he could uncouple, and get out in time, when he found he had a tight pin to deal with, and had to stop to knock it up and out, he should have provided for

his safety by stepping out from between the cars, or in some other way. He cannot complain of the company because its agent did his duty as he was accustomed to, and in duty bound to do it. In this case the company, the plaintiff in error, appears to be entirely without fault in the matter, and there is no just ground upon which the finding of the jury could be sustained; and the circuit court of Warwick county erred in its action in refusing to set aside the verdict of the jury, and for that action the judgment in this case will be reversed and annulled, and the case remanded to the circuit court of Warwick county for a new trial to be had therein in accordance with the foregoing views.

JUDGMENT REVERSED.