CARLIN v. THE CHICAGO, R. I. AND P. R. R. Co.

1. **Railroad:** LIABILITY FOR INJURIES: NEGLIGENCE: ONUS. It is well settled in this State that a party cannot recover in an action against a railroad company for injuries to which his own negligence contributed, notwithstanding the negligence of the company.

2. —— In such action, the onus is on the plaintiff to establish not only the negligence of the company but that he himself was not negligent.

3. —— A person going upon the track of a railroad for the purpose of walking thereon, is bound to exercise ordinary precaution in looking out

for the approach of the cars, and to *use* his ordinary senses to that end. His failure to do so constitutes negligence on his part as matter of law.

4. **New trial:** CONCURRING VERDICTS. While a stronger case should be required in an application for a new trial, where two concurring verdicts have been rendered for the same party, yet when it appears that such verdicts are clearly against the weight of evidence and show no fair and proper exercise of judgment on the testimony submitted, the application should be granted.

## *Appeal from Clinton Circuit Court.*

### TUESDAY, OCTOBER 21.

ACTION for damages on account of injuries received by plaintiff by being run over by an engine on the defendant's railroad in consequence of the negligence of its employees. The answer denies the material allegations of the petition and avers that the injuries sustained by the plaintiff were the result of his own negligence. Verdict and judgment for plaintiff. Defendant appeals. For the further facts of the case see opinion.

*Cook, Richman & Bruning* for the appellant.

*Foster & Gabbert* for the appellee.

MILLER, J.—I. This cause was before this court and reversed on plaintiff's appeal at the June term, 1871. See 31 Iowa, 370. The only question then before us was whether, where an erroneous instruction, requested by the successful party, having been, by mistake, handed to the jury, and taken by them to their room, and there being no showing but that it was read and considered by the jury, this court will presume that no prejudice resulted therefrom to the unsuccessful party? It was held that such presumption would not be indulged, and the judgment was reversed and the cause remanded.

The cause was again tried to a jury who rendered a verdict for the plaintiff for $6,041. The court overruled a motion, made by the defendant, for a new trial, and rendered judgment on the verdict, from which the defendant appeals and

assigns numerous errors, among which is the overruling of its motion for a new trial, on the ground that the verdict of the jury was contrary to the evidence and the instructions of the court.

The evidence shows that on the 6th day of March, 1869, and prior thereto, a firm known by the name of Parker & Kimball were engaged, with engines, cars and men, in making a cut and embankment near the city of Davenport for a new track for the Chicago, Rock Island and Pacific Railroad. The plaintiff was employed as a laborer on this work. The work was undertaken in the first instance by Parker & Kimball under a contract with the railroad company. Whether this relation continued up to the time of the injury to the plaintiff is a disputed fact, defendant contending that it did and that the plaintiff at the time of the injury was an employee of Parker & Kimball, while it is claimed by the plaintiffs' counsel that this relation did not exist, but that plaintiff was an employee of the defendant. In the view we take of the case this question becomes immaterial. The accompanying map shows the situation of the new track that was being constructed; the track which was in use by the railroad company for its ordinary business, and the nature and the character of the ground over which both tracks pass.

The plaintiff was employed in February in the work of grading down the new track near Locust street. He states in his testimony that at that time and up to the time of his injury he was boarding on the corner of Locust and Sturdevant streets; that one or two days prior to the injury (which occurred on the 6th day of March, 1869), his work was at the tank (on what is called the contractor's track), pumping water and keeping up fires to prevent the water from freezing. This water was used by the engines engaged in hauling dirt on the new track. On the morning of the 6th of March, plaintiff testifies he fixed up to start to his work; that the morning was very cold; that in addition to his other clothing he put on an overcoat, "a small cap without ear-laps, and a worsted shawl, which he lapped around and let it come over his mouth

COPY OF PLAT REFERRED TO ON P.6.

EXPLANATIONS.

The figures at the left show the distances, in feet, from Locust street.
The track at the left is the one used by the contractors.
That at the right is the main track.
The shading on the right of the main track represents bluffs, or banks,
and the shading on the left represents ground lower than main track.
The figures by the main track show distances, in feet and inches, from
track to edge of cut on the left, and from track to foot of bank on the right.
The Second Ravine" is the place where Carlin says he came upon the track

Lith. by Weed, Parsons & Co., Albany, N.Y.

and up to his ears, and tied it ;" that his boarding-house was half a mile or more from the railroad track; that he went across the fields and came upon the track at the second ravine; that he came from the ravine and went up where the track was raised some six or eight feet, and then saw a train coming up the bluff; that he waited until the train passed him. The evidence further shows that this was a heavy freight train drawn by three engines, two in front and one in the rear; the engine in the rear was "No. 100." The plaintiff further testifies that after the train passed him, he went up the road on the main track; that there were three roads there, one for loaded cars and one for empty cars, the one for loaded cars being pretty close to the bank of the main track, and it was eighteen or twenty feet down to the new track; that there were steps cut in the bank to go down; that he went there for the purpose of going down on the construction track, and there found a number of loaded cars, and the train standing with an engine attached. The witness further says that he saw he could not get down there, and so came back on the main track, and started at a good run thereon to the bridge No. 2, where he had to cross to go to the tank; that he went "right back on the main track, and was walking between the rails so as to get over the bridge and go to the tank, but before he got to the bridge he was struck" by engine No. 100, returning down the grade; that he heard no sound of whistle or bell before being struck; that his hearing was good, for he had heard steam whistles in town, near a mile off, blowing for seven o'clock. The plaintiff testified further, in reference to his injuries, expenses, etc. On cross-examination, he answered interrogatories put by defendant's counsel, as follows:

"*Int.* From the time you went upon the main track until you were struck, did you look around, or take any precautions to learn whether there might be a train approaching you from behind?

*Ans.* I cannot tell whether I looked around or not; it seems as though I had only got on the track when I was struck; I

got on the track and started to run, and I know it was only a very short time till I was struck; I cannot tell whether I looked around or not.

*Int.* Well, *did* you look around; I want to know that?

*Ans.* I cannot tell.

*Int.* Well, what do you think about it?

*Ans.* I can't tell any thing about it?

*Int.* Did you know there was an engine coming?

*Ans.* No, sir.

*Int.* If there had been an engine coming you would have seen it, would you not?

*Ans.* If I had had warning.

*Int.* If you had looked around and an engine was coming, you would have seen it, wouldn't you?

*Ans.* Yes, sir.

*Int.* Did you think of any danger?

*Ans.* No, sir; I thought the train had gone out into the country.

*Int.* You had no reason for looking around, had you?

*Ans.* No, sir.

*Int.* You do not recollect that you thought, "Now, I must look around to see if there is a train coming?"

*Ans.* No, I do not recollect.

*Int.* You say you are not sure whether you looked around or not?

*Ans.* I am not sure.

*Int.* If you had looked around, why did you look around?

*Ans.* I cannot tell.

*Int.* If you looked around you must have had some object?

*Ans.* I cannot tell what was going on in my mind; I may have looked around to see whether it was clearing up, or something like that; *but I did not look around with reference to another train of cars backing up.*

*Int.* You have no certain recollection as to whether you looked around or not?

*Ans.* No, sir.

*Int.* You are positive that you did not see any engine?

*Ans.* No, I did not see any."

The other evidence in the case shows that when the train which passed plaintiff, going up the grade, reached Locust street the engine in the rear, being engine "100," was detached and returned to the city; that this was the engine which struck the plaintiff while thus returning; that it had been the ordinary practice for years for freight trains to be hauled up this grade by two or more engines, one of which being attached to the rear of the train, and which started back at or near Locust street; that in returning down the grade the engine used no steam, and that ordinarily there is no occasion for sounding the whistle or ringing the bell until reaching the " whistling point," 2,500 feet from Locust street.

The evidence is conflicting on the question whether the persons in charge of the engine did, or could with ordinary diligence, have seen the plaintiff before striking him. It is conceded that the track was straight from Locust street to the point where plaintiff was injured, a distance of about 1,600 feet.

The court instructed the jury, at the request of defendant, as follows:

" 3. Even if the plaintiff had been rightfully upon the track at the place where he was injured, then inorder to recover any damages, the plaintiff must have shown by a preponderance of evidence that the servants and agents of the defendant were not using ordinary care in running the locomotive; that they saw the plaintiff and after seeing him and knowing his danger did not give him any warning; and the plaintiff must further show that he himself was using ordinary care, and that he did not, by his own negligence, contribute to the accident; and ordinary care requires that persons walking upon a railroad track, shall use their ordinary senses, and they should look out for trains, or engines approaching from behind."

1. RAILROAD.

The doctrine is well settled in this State that a party cannot recover from a railroad company for an injury to which his own negligence has contributed, notwithstanding the negli-

gence of the company. *O'Keefe* v. *The C., R. I. & P. R. R. Co.*, 32 Iowa, 467. And it is also the established law of this State, as it is of most of the States' of the Union, that to entitle the plaintiff to recover in an action for injuries in such case he must not only show by evidence that the defendant was guilty of negligence causing the injury, but also that he himself has not been negligent. The burden of proof is upon him to establish both of these facts. *Donaldson* v. *The M. & M. R. Co.*, 18 Iowa, 280; *Balcom* v. *D. & S. C. R. Co.*, 21 id. 102; *Greenleaf* v. *Ill. Cen. R. Co.*, 29 Iowa, 14; *Spencer* v. *Same*, id. 55; *Kesee* v. *The C., & N. W. R. Co.*, 30 id. 78; *Dewey* v. *Same*, 31 id. 373; *Reynolds* v. *Hindman*, 32 id. 146, and cases cited on p. 147; *O'Keefe* v. *The C., R. I. & P. R. Co., supra.*

The instruction given by the court below is in accord with this doctrine. It is also sustained by reason and authority in defining the ordinary care required of persons walking upon a railroad track. It was said in *Artz* v. *C., R. I. & P. R. Co.*, 34 Iowa, 153, that the cases, "almost without an exception, concur in holding," that where a person, knowingly about to cross a railroad track, may have an unobstructed view of the railroad, so as to know of the approach of a train a sufficient time to clearly avoid any injury from it, he cannot, *as a matter of law*, recover, although the railroad company may have been also negligent. (See cases there cited in support of the rule.) The case of *Dodge* v. *The B., C. R. & M. R. Co.*, 34 Iowa, 276, holds the same doctrine. In that case the railroad company had neglected to put up, at a public highway crossing, the sign required by law. The plaintiff's son being upon the highway with a team, and forgetting that there was a railroad intersecting it, and attempting to cross the track without looking to see if a train was approaching, the team was struck and injured by a passing train. It was held that, notwithstanding the negligence of the railroad company in failing to put up a proper sign at the crossing, the negligence of the person in charge of the team in failing to look out for an approaching train before attempting to cross the track, was such negligence as precluded his right to recover.

If it is, in law, negligence to attempt to *cross over* the track of a railroad, on a public highway, without first looking for the approach of the cars, when a clear view of the road can be had, it would seem to be much greater negligence in a party going upon the track, and walking thereon lengthwise between the rails, without looking, or taking any precautions, or even thinking of danger, as the plaintiff's own testimony in this case shows *he* did. He states that if he had looked he could have seen the engine approaching him; that he did not think of danger, and did not look around with reference to cars approaching him from behind. That this conduct of the plaintiff contributed proximately to the injury cannot be doubted. Conceding, then, that the plaintiff was not wrongfully on the track, and that the defendant's employees were negligent in not seeing him, or warning him of approaching danger, still his own negligence was such that he cannot recover. The negligence of the engineer in charge of the engine could scarcely have been greater than was that of the plaintiff. See *Stevens* v. *O. & S. R. Co.*, 18 N. Y. 422; *Brooks* v. *B. & N. F. R. Co.*, 25 Barb. 609 — cases directly in point.

The verdict of the jury, in view of the law as settled in this State, and as given to them by the court below, was contrary thereto, and not sustained by the evidence. This court has gone as far perhaps as any court of last resort in this country, in sustaining the verdicts of juries; always refusing to interfere when there is evidence upon which the verdict finds reasonable support, even when, if sitting as jurors, we would, without hesitation, have found the other way upon the evidence. But, when there is an entire want of evidence to support the verdict, or to establish a fact essential to the verdict, we are constrained to so hold, and to interpose for the purpose of correcting the error.

II. It is insisted by appellees' counsel that the verdict in

4. NEW TRIAL. this case is the second concurring verdict, a former one having been set aside, and that for this reason the present one ought not to be set aside.

In *Jourdan* v. *Reed*, 1 Iowa, 135, it is said in the opinion

by WRIGHT, Ch. J., that " while the court should require a much stronger case to be made, in an application for a new trial, where two verdicts have been rendered for the same party, yet such second verdict by no means concludes the court from again granting a new trial. * * * And as an appellate court, we are, and should be, much less inclined to disturb the judgment, when two verdicts have been rendered. Indeed, a very clear, strong and conclusive case must be made out, and we must be entirely satisfied that the second verdict was flagrantly against evidence, and that manifest injustice has been done; *. * * and where such a case is made clearly apparent to this court, a new trial will be ordered, though refused by the district court. * * * This objection to granting a new trial, it is clear, applies more strongly where there have been two concurring verdicts. In such cases, a new trial should rarely be granted unless some plain rule of evidence, or principle of law, be violated. But, where the jury have disregarded the law, or have rendered two concurring verdicts that show no fair and proper exercise of judgment on the testimony submitted, but have clearly found against the evidence, a third trial ought to be granted." See cases there cited on p. 139.

Adopting the rule here expressed, as the true and proper one, we have no hesitation in holding, as was done in that case, that the case before us comes clearly within it. One of the essential facts to sustain the verdict is entirely without proof. On the contrary, the evidence shows clearly that such fact (reasonable and ordinary care on the part of the plaintiff), did not exist, and the jury, in rendering a verdict for the plaintiff, violated a plain and well-settled rule of law, which was clearly stated by the court in the above paragraph of the instructions. It was the plain duty of the court to set aside the verdict and grant a new trial.

Reversed.