## CRAMER v. THE CITY OF BURLINGTON.

1. **Evidence: RECENT FACT.** In an action for damages occasioned by defendant's negligence, the testimony of one who examined the defects complained of four months after the accident was not inadmissible, although the fact that so long a time had elapsed would greatly impair its value.

2. ——: **FAILURE OF PLAINTIFF TO TESTIFY.** The fact that plaintiff's mind was impaired by his injury having been established, no presumption that his testimony, if taken, would be unfavorable to him, could arise from the failure to call him as a witness.

3. **Negligence: CARE REQUIRED : INFERENCE FROM CIRCUMSTANCES.** While the plaintiff in an action for damages for personal injuries must establish the fact that his own negligence did not contribute to the injury, yet he will be deemed to have done this if the circumstances shown reasonably justify an inference of care.

*Appeal from Henry Circuit Court.*

THURSDAY, OCTOBER 10.

ACTION for personal injuries alleged to have been sustained by reason of a defective sidewalk. This case is before this court for the fourth time. It is reported in the 39th, 42d and 45th Iowa. The last trial, as well the former ones, resulted in a verdict for plaintiff. Defendant appeals.

*J. & S. K. Tracy* and *C. L. Poor*, for appellant.

*Blake & Hammack*, for appellee.

ADAMS, J.—There was an offset in the sidewalk, where a barrier was generally maintained to turn the travel. The accident occurred by reason of the plaintiff's falling from the sidewalk on a dark night at the place where the offset was, and the negligence of the city consisted, as it is alleged, in allowing the barrier to become insufficient. The barrier usually maintained consisted of a board, one end of which was nailed to the corner of a saloon,

and the other end to a post. Whether the barrier was up at the time of the accident does not appear. The plaintiff contends that, if up, it was insecurely fastened. For the purpose of showing that it was not securely fastened, the plaintiff introduced as a witness one Grant, who examined the place about four months after the accident. He was asked the following question: "Will you please tell the jury the then condition of the sidewalk where the board was nailed across from the railing to the saloon? Tell us the condition and general appearance where the nails were driven into the saloon and railing guard." This question the witness was permitted to answer, against the objection of defendant, and said: "It had been nailed on the east side, and the nails driven into the two-inch siding, and also in the corner piece. It was nailed into that until it was split to pieces. The siding was split, and so was the corner piece."

Another question was asked in these words: "You have stated that the board was split. What was the appearance of the split as to being a recent one?" The witness was allowed to answer, against the objection of the defendant, and said: "I don't think I noticed any fresh split about the board, or any split about it that looked like it had been done recently." He was also allowed to state, against the objection of the defendant, as to the appearance of the nailing and renailing; that "the board had the appearance of being up a great many times so that it was split to pieces, punched full of holes, and in a condition that would not hold nails." The defendant contends that this evidence was improperly admitted, because it related to the condition at a time subsequent to the accident, and did not tend to show what the condition was at the time of the accident.

To this, we think, it may be said that the mere fact that the examination was made subsequent to the accident would not render the evidence inadmissible. If the examination had been made the next morning after the accident no one would doubt that the condition, as then revealed, would have thrown

much light upon the condition as it was at the time of the accident. The fact that the examination was made four months after the accident would, of course, tend greatly to impair the value of the evidence derived from the examination. Yet we are not able to say that such fact was sufficient to destroy its value altogether. The evidence tended to show that the defects, as then revealed, were not recent. This did not appear on the former appeals. We think that the court did not err in admitting the evidence.

II. Evidence was introduced by the defendant showing that, upon the night of the accident and previous to it, the plaintiff was at a certain saloon near the place of the accident, and drank soda-water and wine three or four times. The plaintiff introduced evidence, against the objection of the defendant, showing that the saloon was licensed to sell wine and beer. The admission of the evidence is assigned as error. It is contended that the evidence was immaterial, and well calculated to influence the jury against the defendant. Had there been any evidence showing that the defendant was under the influence of intoxicating liquor we think the defendant's position would be well taken. The jury might naturally have concluded that if the accident occurred from the use of liquor which the defendant had granted a license to sell, it should not be allowed to escape liability upon that ground. But there was not only no evidence showing that the plaintiff was under the influence of liquor, but there was evidence that he was not. The jury could not properly, then, have found that he was, and we must assume that they did not. The evidence, then, as to a license was without effect, and the defendant was not prejudiced by its admission.

III. The plaintiff's testimony was not taken in the case.

2. ———: failure of plaintiff to testify. With reference to this fact the defendant asked an instruction in these words: "If the plaintiff is in possession of all the facts and circumstances attending his conduct on the night he was injured, the number of times he drank, what he drank, etc., on that night, and is able mentally

and physically to explain the same before the jury in person or by deposition, his failure to give his evidence as to these facts raises the presumption that, if given, it would be against him." The court refused to give this instruction, and the refusal is assigned as error.

Without holding that there might not be a case where the failure of a party to give his evidence would raise a presumption against him, it appears to us that such presumption could not be held to arise in this case. The evidence shows that the principal injury suffered by defendant was concussion of the brain. Medical testimony and the testimony of intimate acquaintances was introduced, showing that the plaintiff's mind was considerably impaired. One physician says that it is in an abnormal condition. On the other hand it is true one witness testified that he had an interview with the plaintiff, being sent for that purpose by the mayor of the defendant city, and that the plaintiff conversed with him about as fully and intelligently as ordinary men. But this evidence fails entirely to show that the plaintiff had in mind the facts and circumstances pertaining to his injury. We should not be justified in holding that the testimony of an insane or demented person, or one supposed to be such, should be taken to demonstrate his insanity or dementia, lest a presumption should arise against him from the failure to take it.

IV. It is insisted by the defendant that the plaintiff introduced no evidence tending to show that he did not himself contribute to the injury. If such is the fact he must fail to recover. *Carlin v. The C. R. I. & P. R. Co.*, 37 Iowa, 322. But it is sufficient if the circumstances shown reasonably justify an inference of care. It is shown that the plaintiff, a moment before the accident, was sober, and walking along the sidewalk in question. It was upon a dark night, and while so walking he fell off at a point where there was an offset, and where the ground beyond was several feet lower. If the barrier was down, and the night was too dark to enable him to discover the offset in the side-

3. NEGLIGENCE: care required: inference from circumstances.

walk and the pitfall beyond, and if he was otherwise ignorant of it, it was a matter of course that he should fall. Where a person is shown to be walking upon a sidewalk in a city, in the usual way, he appears so far to be in the exercise of proper care. If he had climbed over the barrier and fallen, or had beaten it down with his foot or weight, the case would be different. But the evidence does not so show. Indeed, it tends to show otherwise. The plaintiff, with others, immediately before the accident was in a saloon near where it occurred. He started out. One of the witnesses says: "Soon I went out. My brewer went along with me for home. After I got out I said, 'Good-bye, Cramer.' There was no answer. I said maybe he has fallen down. I got a light and found him lying down below."

It is true that there is evidence showing that the barrier was up that very night a short time before the accident; but there was other evidence showing that persons were accustomed to lounge about this place, and lean and sit upon the board and break it down. Now it seems to us that the most reasonable theory of the accident is that the barrier had been broken down, and that the plaintiff simply walked off, or that he walked against it as a person might in the darkness of the night, and that the barrier gave away by reason of the imperfect condition of the fastenings.

V. The plaintiff read in evidence the deposition of one Beck, who testified that he nailed up the board the evening of the accident. He said: "I saw the board off that evening, and told a boy to help me put it up. He came with some tenpenny nails. There was a strip, and the board was nailed to that. There were three tenpenny nails driven through the board into the strip; that was fastened with spikes. My attention was called to the injury the next morning. I went down to see the condition of the board; it was pulled as if some one had knocked it off and broken the nails. The nails were bent as if they had been forced off. We could sit on the board and it did not give any that evening. It was about four feet high

from the sidewalk." The plaintiff, after reading the deposition, was allowed to withdraw it, against the objections of the defendant. The ruling of the court in this respect is assigned as error.

It is not shown that the defendant could not have introduced the same evidence. Besides, we do not think that the evidence was such that the defendant should complain of its withdrawal. Of course, if a sufficient barrier was erected that evening it would go far to show that the defendant was not guilty of negligence. But the evidence shows that the barrier was just high enough for persons to sit on, and that they had been accustomed to sit on it and break it down. If the board was put up in the manner in which the witness described, the most reasonable explanation of its being down is that enough persons sat on it to break it down. It is incredible, if the plaintiff was sober, as the evidence shows, that he should have beaten off the board himself and then precipitated himself from the sidewalk. Besides, that would be inconsistent with the testimony of the witness who bid him "good-bye," supposing that he was within hearing, and receiving no answer inferred that he had fallen, as the fact was.

We think the judgment must be

AFFIRMED.