## SHULTZ *v.* THIRD AVE. R. Co.

(*Common Pleas of New York City and County, General Term.* December 3, 1888.)

TRIAL—VERDICT—SUFFICIENCY OF EVIDENCE.

Plaintiff's testimony that his injuries were caused by the car suddenly starting while he was alighting from it, was uncorroborated, while that of the conductor, that plaintiff fell while stepping from the car while it was in motion, was corroborated by his own report and by an affidavit of plaintiff, both made on the day of the accident. Plaintiff alleged that when he made the affidavit he was so dazed that he did not know what he was doing, but was contradicted by that of three witnesses who were present, by the appearance of his signature to the affidavit, and by the erasure from the affidavit, by his direction, of the word "jumped," and the insertion of "stepped." *Held*, that a verdict for plaintiff was contrary to the weight of evidence.

Appeal from trial term; J. F DALY, Judge.

Action by Simon Shultz against the Third Avenue Railroad Company to recover for personal injuries. Defendant appeals from a judgment for plaintiff, and from order denying motion to set aside verdict and grant a new trial.

*Solomon, Kantrowitz & Esberg,* for appellant. *Hoadly, Lauterbach & Johnson,* (*Wm. N. Cohen,* of counsel,) for respondent.

LARREMORE, C. J. This action was brought for the recovery of damages for personal injuries sustained by the plaintiff through the alleged negligence of the employes of defendant. A judgment was recovered and entered for $631.30, from which this appeal is taken.

Plaintiff's account of the manner in which the accident happened, given on the trial, is as follows: "I was seated in a car. * * * I got up to tell the conductor where I wanted to get off. I went to the rear door, and opened the door, and told the conductor to be kind enough to stop at Spring street. He said, 'All right, sir.' When I got to Spring street, I told the conductor please to stop there, and he did stop the car at Spring street, perhaps a few feet below the crossing. I saw the conductor pull the bell when he rung for the car to stop. I stepped to the door, and the conductor pulled the strap. When the car came to a stand-still, I took hold of the baluster or iron rail, and went to step off. I had one foot on the step, and the right foot I had already in an elevated position to step down, but the car gave all of a sudden a jerk, and I was thrown to the ground." If this statement were true, it would conclusively establish negligence on the part of the defendant, and absolute freedom from contributory negligence on the part of plaintiff. But, it appears that immediately after the accident the plaintiff took a car on defendant's road going up town, and proceeded to the defendant's depot on Third avenue. While there it is undisputed that he signed and verified an affidavit, from which the following is an extract: "I boarded car number 173 at 77th street and Third avenue. When at or near Prince street and the Bowery, I got up out of my seat in the car, walked out to the rear platform, and told the conductor I wanted to get off at Spring street. At Spring street I told the conductor a second time to stop the car. The conductor took no notice of me, and I stepped from the car while it was in motion." Of course, if this version were accepted, it would be fatal to plaintiff's recovery, as the court would be obliged to say as a matter of law that contributory negligence existed. There is no corroboration of

plaintiff's testimony at the trial as to the facts of the accident. On the other hand, there are many corroborations of the strongest character of the state-ments made by him in his affidavit, upon the day when the mishap occurred. To begin with, the affidavit itself is entitled to great weight, and for other reasons besides the circumstance that its execution was attended with the solemnity of an oath. Plaintiff claims that the reason why he was induced to make such a statement was that he was so dazed, and his nervous system so upset by his fall, that he had no knowledge of what the paper contained, or of what he was doing. But the signature to the affidavit, a photographed copy of which is in the case, shows no sign of physical weakness or nervous trepidation. It was evidently made with a steady hand, and with consider-able care, although there are no indications of painful effort. It is in all re-spects a better piece of penmanship than the signature made on the day of the trial for comparison, while in the formation of letters and in all essential par-ticulars the two signatures are the sign manual of the same person. In the original affidavit the word "stepped" is written over the word "jumped," which was erased. Mr. Brolles, a notary public, who drew the affidavit, tes-tifies in explanation of this that, when the affidavit was first prepared, it read; "The conductor took no notice of me, and I jumped from the car while it was in motion;" that the plaintiff read the affidavit, and objected to the word "jumped;" and that it was at plaintiff's suggestion that the word "stepped" was substituted. This circumstance tends strongly to show that plaintiff was conscious of what he was doing when he signed and swore to such paper. There is also the direct evidence of a number of witnesses, being officers and employes of the defendant, and also that of a physician who attended the plaintiff at the time when he made the affidavit, to the effect that he was then in full possession of his faculties. There is even a further corroboration of the defense offered. It appears that the conductor of the car from which the plaintiff fell, upon the day of the accident made the following report in writ-ing: "NEW YORK, Dec. 1, 1885. *To the President of the Third-Avenue Railroad Company:* On my 8:44 trip from Harlem, a passenger, in getting off, did not wait for the car to stop, and as he stepped off I pulled the bell. The car was going very easy. He fell, but was not hurt. He got up and walked away, threatening to report me." The conductor also testified on his oral examination that the plaintiff, upon rising after his fall, shook his cane at him, (the conductor,) and manifested great indignation and anger. All the evidence that has been offered on behalf of the defense tends to show that plaintiff's real purpose in going to the company's office was to report the con-ductor for some real or fancied wrong, thereby corroborating the conductor's version of the affair. In his affidavit made that day, plaintiff complains of the conductor, alleging that, although he told him to stop the car, the conductor took no notice of him. Even at the trial plaintiff testified that the conductor was immediately discharged after his complaint. As the trial judge remarked in his charge to the jury: "What was the conductor discharged for? What complaint did he [the plaintiff] make? If his statement is correct, he made no complaint against the conductor, because the conductor stopped the car, did his duty, and brought it to a standstill; and it was the fault of some one besides him that it went on. Yet he says the conductor was discharged on the spot." It thus abundantly appears that plaintiff's testimony on the trial (and upon that alone this verdict rests) is contradicted by his own statement under oath, made immediately after the accident, and is also inconsistent with a significant statement made by him in giving such testimony. On the other hand, the evidence of a number of witnesses examined by defendant agrees in all material points, and is, moreover, corroborated by all the documents in the case.

Our duty in the premises is clear. It is impossible to read the charge of the learned judge who tried this case without perceiving that his personal

impression of the evidence was strongly adverse to plaintiff's claim. He denied the motion to set aside the verdict because contrary to the weight of evidence, but in all likelihood he remembered in so doing that such application could be addressed to the general term on the appeal, and preferred to remit the same to us for determination. This is not merely an instance of the oral testimony of one man being pitted against the unanimous oral declaration of a large number of adverse witnesses. It is, in addition to this, a case where the plaintiff, for the purpose of making out a state of facts that would prevent a dismissal of the complaint, directly denies prior written declarations of his own under oath, and tells a story so inconsistent with his former actions that the conclusion recorded by the jury is absurd. Although in a discussion of this nature each case must be judged by its peculiar facts, and precedents have comparatively little value, yet in many essential respects the case at bar is analogous to *Molloy* v. *Railway Co.*, 10 Daly, 453, and *McCarthy* v. *Railway Co.*, Id. 540. The judgment should be reversed, for the reason that the verdict is against the weight of evidence, and a new trial is ordered, with costs to abide the event.

VAN HOESEN, J., concurs.