# 𝕮𝖆𝖘𝖊𝖘

SARAH J. CUSHMAN, Appellant, *v.* JOHN DE MALLIE and CARRIE DE MALLIE, Respondents.

|  | 46 | 379 |
| --- | --- | --- |
| f | 68 | ¹380 |
| ( | 46 | 379 |
|  | 80 | ¹326 |

*Evidence — inference, from the failure to call a witness, and from putting in evidence only part of a letter.*

Where a sharp conflict arises upon the trial of an action, as to what took place when certain property was returned to the plaintiff's agent by one of the defendants, and the plaintiff does not a call a witness who was stated by such defendant to have been present at the time, the jury may infer that the testimony of such person would be unfavorable to the plaintiff.

Where the plaintiff, on the cross-examination of one of the defendants, produces a letter written by the latter and reads certain extracts therefrom, but neglects to put the whole of the letter in evidence, it may be inferred that the letter contained some assertions which bore favorably on the defendants' position.

APPEAL by the plaintiff, Sarah J. Cushman, from a final judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 10th day of April, 1899, upon the verdict of a jury, and also from an order entered in said clerk's office on the 10th day of April, 1899, denying the plaintiff's motion for a new trial made upon the minutes.

*George M. Williams* and *Nelson E. Spencer,* for the appellant.

*Charles Roe,* for the respondents.

HARDIN, P. J. :

This action was commenced on the 17th day of February, 1899, to recover upon a promissory note made by the defendants, dated

February 4, 1894, for $100, and in the complaint it was admitted that $25 had been paid upon the note. The note contained an indorsement as of April 11, 1897.

Plaintiff's husband, Daniel J. Cushman, was called as a witness in behalf of the plaintiff and testified to the execution of the note and that he saw the defendants sign it; that he drew up the note at John De Mallie's house and that it was delivered the day it bears date, and on the same day it was put in the possession of the plaintiff, who is the wife of the witness, and that the note was delivered to her at No. 16 State street, where she was carrying on a money brokerage business at the time. The witness testified that he was acting for her in making a sale of the property for which the note was given.

From the evidence given in behalf of the defendants it appears that the note was given for a team of horses, harness and wagon purchased of the plaintiff's agent, her husband, for the sum of $100, that being the face of the note, and that, after the note was made, a chattel mortgage was given to Mrs. Cushman as security on the property purchased and also upon some household furniture. At the time the male defendant negotiated for the purchase of the property he only saw one horse and took the representations of the plaintiff's husband in respect to the other horse. In the course of the evidence given by John De Mallie he says that the husband of the plaintiff represented the horses as being "sound and true, though a little along in years," and that "Cushman said to me, 'John, if those horses do not suit you, I will be willing enough to hand you the note back for the horses. They are worth more, a good deal, than what I am selling them for, but I have more horses around the country than I know what to do with, that are eating their heads off.'"

After the defendant John De Mallie had possession of the horses he discovered that they were "both wind-broken and were cribbers, also cripples," and he testifies: "They were so seriously wind-broken that I couldn't work them after I got there. I rested them four or five days, and I didn't get them off a walk. I tried them and one most dropped on me." The witness testified further that in one conversation he held with the plaintiff's husband "he told me to return the horses and he would make a different bargain with me;

he would see that I would be satisfied.    *    *    *    He told me to bring them right in and he would patch up a different dicker, or words to that effect.    He was there when I brought the property in.    When I drove the horses to his barn he was there, or came soon, for I didn't leave until I saw him.    He told me where to put the team, and I put them into the stalls, backing his wagon out of the way."    The witness, continuing his testimony, says that he returned all the property he received and that Cushman did not see him after that until in 1897, or ask him to pay the note.

After the evidence was given which we have mentioned and the defendants had rested, the plaintiff recalled John De Mallie, and an extensive examination was had of him as a witness, and he was shown a letter by the examining counsel, the handwriting of which was admitted by the witness, and certain sentences were read therefrom and the witness was asked in respect to them.

To overcome the evidence given by the defendants the plaintiff's husband, Daniel J. Cushman, was called as a witness and contradicted many of the statements made by the defendant John De Mallie, and attempted to justify the statements made to such defendant at the time the property was sold.

There was a sharp and decisive conflict between the witnesses in respect to what transpired at the time of the sale and as to the conversations held afterwards.    It, however, does appear clearly from the evidence that the property for which the note was given was all returned to the possession of the plaintiff's husband.    In the course of the evidence bearing upon that question the witness De Mallie says that Johnson was at the barn after the horses were put in the barn when they were returned.    The plaintiff did not call Johnson as a witness, and as he was cognizant of the return of the property it is inferential that had he been called he would have corroborated the testimony of De Mallie in respect to the circumstances of the return. Because the plaintiff failed to call him, inferences may be deduced that his testimony would not have been favorable to the party. (*Milliman* v. *Rochester Railway Co.*, 3 App. Div. 109; *McGuire* v. *Hartford Fire Ins. Co.*, 7 id. 590, and cases there cited; *Rider* v. *Miller*, 86 N. Y. 507.)    Although the letter of the defendant John De Mallie was used in the course of his cross-examination, it is rather remarkable that neither party put that letter in evidence;

and inasmuch as it was produced by the plaintiff and used in the course of the cross-examination of such defendant and certain extracts made therefrom, the absence of it as evidence in the case is suggestive that the letter contained some statements and assertions that bore favorably upon the position taken by the defendants at the trial, and, therefore, it was omitted from the evidence by the plaintiff. The circumstance may have led the jury to infer that the plaintiff would have put the whole letter in evidence, if, as a whole, it bore out the contention of the plaintiff.

The plaintiff's learned counsel calls our attention to *Shultz* v. *Third Ave. R. R. Co.* (19 N. Y. St. Repr. 917). In that case there was a conflict in the evidence, and an affidavit made by the plaintiff, showing the day on which the accident occurred, which was the subject of the action, was produced and statements in that affidavit were corroborated by the evidence given by the defendant. The plaintiff's statements as a witness at the trial were not corroborated by any witness, and in determining the question of whether the verdict should have been set aside, as contrary to the weight of evidence, the court said : "This is not merely an instance of the oral testimony of one man being pitted against the unanimous oral declarations of a large number of adverse witnesses. It is, in addition to this, a case where the plaintiff, for the purpose of making out a state of facts that would prevent a dismissal of the complaint, directly denies prior written declarations of his own, under oath, and tells a story so inconsistent with his former actions, that the conclusion recorded by the jury is absurd." We think that case differs very essentially from the one before us.

If the property was all returned by the defendants to the possession of the plaintiff's husband and received by him in accordance with the declaration made by the plaintiff's husband that it might be returned, then it operated as a satisfaction and extinguishment of the note. If the jury were of the opinion that the plaintiff's husband perpetrated a fraud upon the defendants in the sale of the property by false and fraudulent misrepresentations then they were authorized to find that the defendants rescinded the contract by returning the property to the plaintiff. While it is difficult to tell which one of the witnesses that were sworn on the trial gave the most truth and the least falsehood from reading this record, the

jury have performed their functions by finding the questions of fact favorable to the defendants. ( *Williams* v. *D., L. & W. R. R. Co.,* 155 N. Y. 160.)

We are not impressed on reviewing the evidence that the verdict is so contrary to the evidence, or to the weight of evidence, that we ought to disturb the conclusion reached by the trial judge when he heard the motion to set the verdict aside on the very grounds now urged before us.  He saw the witnesses and was able to appreciate what credit should be given to them quite as well as we are able to do from reading their testimony printed in the record. We think it to be our duty to accept the verdict of the jury, and the decision made by the trial judge in refusing to set it aside. We, therefore, affirm his order denying the motion to set aside the verdict, and we also affirm the judgment.

All concurred.

Judgment and order affirmed, with costs.